UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 05-67-P-H |
| | ) | |
| MARC S. SHINDERMAN, M.D., | ) | |
| | ) | |
| *Defendant* | ) | |

*MEMORANDUM DECISION ON MOTION FOR EARLY PRODUCTION OF DOCUMENTS*

The defendant, Marc Shinderman, M.D., requests court approval of subpoenas to be issued to six entities for information to be used in a planned motion to dismiss based, *inter alia*, on

> equitable estoppel on account of governmental confusion, equitable estoppel on account of affirmative government misconduct, equitable estoppel by entrapment, equitable estoppel by public authority, equitable estoppel by governmental silence when it had a duty to act and related bars to criminal prosecution based upon government conduct . . . .

Dr. Shinderman's Motion for Early Production of Documents as a Precursor to a Motion to Dismiss, etc. ("Motion") (Docket No. 11) at 11, 15-16.  The defendant is charged with 25 counts of using a DEA registration number issued to another person to write a prescription for a controlled substance, 25 counts of issuing an invalid prescription for a controlled substance by forging another person's name and using that person's DEA registration number, two counts of furnishing false material information in a pharmacy record or document and 16 counts of making materially false writings and documents in connection with the delivery of health care benefits and services.  Indictment (Docket No. 1).

The defendant first requests a subpoena directed to the United States Drug Enforcement Agency for (i) "[a]ll documentation . . . associated with any application for registration made" by the

1

defendant in 2001 or 2002 "using a proposed business address of One Delta Drive, Suite A, Westbrook, ME 04092;" (ii) "[a]ll documentation . . . concerning the registration or other licensing of CAP Quality Care as an opioid or narcotic treatment program;" (iii) "[a]ll documentation . . . concerning DEA policy, regulations, or practices, about the issuance of . . . DEA registration numbers to practitioners;" (iv) "[a]ll documentation . . . created or obtained by DEA . . . concerning any contacts between any DEA official and a member of the news media regarding CAP Quality Care or Dr. Shinderman during the period August 1, 2001, through the present;" (v) "[a]ll documentation . . . created or obtained by DEA . . . concerning any operational or raid planning associated with the execution of the search warrant that occurred at CAP Quality Care . . . on September 9, 2005 [sic];" (vi) "[a]ll documentation . . . created or obtained by DEA . . . concerning any strategic planning that it or its agents may have undertaken with regard to the investigation of CAP Quality Care or Dr. Shinderman;" (vii) "[a]ll documentation created or obtained by DEA . . . concerning DEA policy, practice or procedures, or statutory authority, or regulatory authority, concerning the treatment of a practitioner, in general and Dr. Shinderman in particular, who . . . <u>prescribes</u> controlled substances for a legitimate medical purpose at a second location for which the practitioner's DEA registration application is pending approval; or . . . <u>prescribes</u> the sort of controlled substances for which he is authorized to prescribed at the location where he is registered;" and (viii) "[a]ll information contained in any . . . database that DEA used [sic] to store 'derogatory' information about individuals, including practitioners." Attachment "A" to Motion at [1]-[3] (emphasis in original).

The parties agree that the defendant's requests are governed by Fed. R. Crim. P. 17(c). Motion at 1; Government's Memorandum of Law in Response to Defendant's Motion for Rule 17 Subpoenas ("Opposition") (Docket No. 15) at 1. That rule provides, in relevant part:

    **(c) Producing Documents and Objects.**

> **(1) In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before that are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1). The rule also provides that "[n]o party may subpoena a statement of a witness or of a prospective witness under this rule. Rule 26.2 governs the production of the statement." Fed. R. Crim. P. 17(h). The extremely broad language of the defendant's request may reasonably be interpreted to include statements of prospective witnesses, in violation of Rule 17(h). If the motion were granted, therefore, the approval would be narrowly drawn to exclude such statements.

In order to obtain production of materials before trial under Rule 17(c), a defendant must show

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974); *see also United States v. LaRouche Campaign*, 841 F.2d 1176, 1179 (1st Cir. 1988). "[I]t has always been clear that Rule 17(c) was not intended as a discovery device . . . ." 2 C. Wright, *Federal Practice & Procedure* § 274 at 242 (3d ed. 2000); *see Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). The burden is on the party seeking the subpoena "to show the evidentiary nature of the requested materials with appropriate specificity." *United States v. Skeddle*, 178 F.R.D. 167, 168 (N.D. Ohio 1996). The requesting party "must do more than speculate about the relevancy of the materials being sought." *Id*. The "mere hope that some exculpatory material might turn up" is insufficient. *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980).

Here, the defendant asserts that the government's case is based on a "discredited assumption that there was a relationship between an unusual number of methadone-related overdose deaths in the Portland area during 2002 and CAP Quality Care, a methadone treatment clinic in Portland [sic] where Dr. Shinderman . . . acted as a consultant." Motion at 2. The motion does not specify by whom or when the assumption was "discredited." It offers no verifiable evidentiary support for its assertion that "federal law enforcement authorities considered Dr. Shinderman to be the national icon of high-dose methadone treatment and that his prosecution would be a symbolic solution to the methadone overdose deaths." *Id*.

More helpfully, the motion asserts that Dr. Shinderman was "fully licensed as a physician in Maine" at all relevant times, with "full authority to issue prescriptions for controlled substances;" that at all relevant times he possessed two controlled substance registrations issued by the DEA allowing him to write prescriptions for the drugs at issue in this proceeding; that there was "confusion" during the relevant time frame as to whether a practitioner who practiced and had a DEA registration in one state could practice and prescribe in another state without obtaining a second DEA registration (although the persons "confused" are not identified); that at all relevant times CAP Quality Care possessed a valid DEA registration certificate which authorized the dispensing of methadone; that Dr. Shinderman filed an application, apparently with the DEA, reflecting CAP Quality Care's address in Maine and referring to the DEA registration number assigned to him in Illinois; that the Maine Office of Substance Abuse decided in May 2002 to review the practices of CAP Quality Care and another methadone treatment facility in the Portland area in response to media coverage of "what law enforcement officials believed was methadone treatment-related accidental overdoses;" that the state survey reported that CAP Quality Care was "in compliance with Federal and State Regulations regarding take-home doses and diversion control;" that the Center for Substance Abuse Treatment, a

4

"regulatory component of the federal Substance Abuse and Mental Health Service Administration," released a report in September 2003 in which it concluded that "the drug-related deaths were consistent with patterns found in other states and that they were not attributable to regulatory misconduct or negligence by CAP Quality Care;" that federal law enforcement officials initiated an investigation of Dr. Shinderman and CAP Quality Care in August 2002 "because of a 'large number of overdose and overdose death cases attributable to the diversion of methadone from [methadone] clinics;'" that 30 armed officers entered CAP Quality Care "during business hours" on September 9, 2003 to execute a search warrant and that the affidavit submitted in support of the warrant "did not contain any justification whatsoever for the massive show of force that was displayed" during execution of the warrant; that the searching officers "detained staff members and patients" inside the clinic and "turned away patients who attempted to obtain treatment;" that "[b]roadcast and print news media personnel arrived at the clinic on the heels of the law enforcement officers;" that the medical director of CAP Quality Care was simultaneously questioned about Dr. Shinderman's prescribing practices at another location; and that the government has provided defense counsel with "a copy of a 54-page affidavit supporting the issuance of the search warrant . . . together with an inventory record of items seized . . ., electronic copies of grand jury exhibits and documentation regarding the collection of various prescriptions from Portland-area pharmacies." *Id*. at 3-10.

With respect to the materials sought by the defendant from the DEA, he makes no attempt to show that all of these materials are "not otherwise procurable reasonably in advance of trial by exercise of due diligence." It would seem, for example, that the defendant would already have a copy of his own application for registration (part 1 of the proposed subpoena), particularly given that he knows the control number of that application, the date of the application and the date when it was received by the DEA. He does not suggest that the other materials he seeks which are related to that

application would not be made available to him on request without resort to a subpoena. Nor has he made any such showing with respect to parts 2-3 and 7 of his requested subpoena to the DEA. With respect to all 8 categories of the proposed DEA subpoena, the defendant has failed to do more than speculate about the existence of most of the materials sought, let alone their relevance. For example, he cites no authority for the proposition necessarily implied by his argument that contact between the DEA and the news media about him or CAP Quality Care (part 4 of the request) is evidence *per se* of governmental misconduct severe enough to serve colorably as an absolute defense to the charges against him. Apart from heated rhetoric, the defendant offers little to support his request; certainly, he offers no case authority. He offers no evidence that the documents sought in parts 5 and 6 of his request are likely to exist. Similarly, there is no evidence that any database such as that referred to in part 8 of the request contains "derogatory" information about the defendant, nor is it reasonable to conclude from the fact that a DEA employee consulted such a database, the location of which is not specified, in the case of one physician whose DEA registration was revoked,[1] that the DEA itself "stores" or had "stored" such information in such a database. The defendant fails to offer even a suggestion that such information was used in his case by the DEA. Part 8 is a classic fishing expedition. It does not meet the basic test of relevance. *See United States v. Lieberman*, 608 F.2d 889, 904 (1st Cir. 1979). In general, all that the defendant offers in support of the requested subpoena to the DEA is "a 'mere hope' that something of value might turn up in the documents." *United States v. Gikas*, 112 F.R.D. 198, 201 (D. Mass. 1986). That is not enough.

> It is not enough that the documents have some *potential* of relevance and evidentiary use. There must be a sufficient likelihood that the requested

---

[1] The reference cited by the defendant as an "example" ("[*s*]*ee, e.g.*," Attachment A to Motion at [3]), *In the Matter of Rosalind A. Cropper, M.D.*, 66 Fed. Reg. 41040 (2001), provides: "A registration technician in DEA's Atlanta, Georgia, Field Division, stated in an affidavit in evidence as a Government exhibit that on April 3, 1998, Respondent called her and asked the status of her application, and that during this conversation that registration technician was reviewing a databank that revealed derogatory information about Respondent." *Id*. at 41046. That is the entire reference to any such "database."

6

> material is relevant to the offenses charged in the indictment and a sufficient preliminary showing that the requested material contains evidence admissible with respect to the offenses charged. Conclusory allegations of relevance and admissibility are insufficient.
>
> * * *
>
> In describing the documents, the subpoena must refer to specific documents or, at least, to specific kinds of documents. Requesting entire files instead of specific documents indicates a fishing expedition. The specificity hurdle, however, cannot be cleared by simply naming the title of the document. The moving party must specify *why* the materials are wanted, *what* information is contained in the documents, and *why* those documents would be relevant and admissible at trial.

*United States v. Jackson*, 155 F.R.D. 664, 667-68 (D. Kan. 1994) (citations and internal punctuation omitted; emphasis in original). Use of terms such as "any and all documents" or "including, but not limited to" indicates a fishing expedition. *Id*. at 668. The defendant's request in this case is replete with such terms.

The same is true of the defendant's proposed subpoena requests to other agencies. Those agencies are mentioned specifically only in the portion of the defendant's motion entitled "Relevant Background," as having provided members of an *ad hoc* task force formed by the United States Attorney's Office in Maine, the objective of which "was to prosecute Dr. Shinderman and CAP Quality Care in response to the methadone overdoses." Motion at 8. The motion provides no suggestion of the manner in which these agencies participated in "the Government's exploitation of circumstances arranged by the Government itself" that will provide the basis for the defendant's motion to dismiss the indictment. *Id*. at 13. Even accepting the defendant's assertion that the intent of each of these agencies when participating in the task force was to prosecute the defendant, he has cited no authority, nor even made any argument, that such an intent constitutes governmental misconduct. The relevance prong of the burden the defendant must meet in order for the subpoenas he seeks to be issued has not been directly addressed, and certainly has not been satisfied, in the defendant's submissions in connection with this motion.

Other problems exist with the remaining requests as well. For example, the defendant has made no attempt to show that the Office of Inspector General for the Department of Health and Human Services has or would likely have the defendant's DEA application (Section B(1) of Attachment A to the Motion) or information about DEA's polices and practices (Section B(5)). The same is true of the investigative staff of the United States Attorney's Office (presumably the United States Attorney's Office in Maine), Attachment A, Sections C(1) & (5); the Maine Drug Enforcement Agency, Attachment A, Sections D(1) & (5); the Maine Board of Pharmacy, Attachment A, Sections E(1) & (5); and the Maine Department of the Attorney General, Attachment A, Sections F(1) & (5).

The case law cited by the defendant in his reply memorandum, Dr. Shinderman's Reply to the Government's Opposition to Early Production of Subpoenaed Documents, etc. (Docket No. 16) at 2, supports the undisputed propositions that certain of the defenses mentioned by the defendant as those upon which he will base his motion to dismiss the indictment are available to all federal criminal defendants and that certain of those defenses should be raised by motion before trial. They are not sufficiently similar on their facts to the instant case to be of any help to the defendant in meeting his burden to demonstrate need for the requested materials in order to bring such a motion, nor does he cite them for that purpose.

For the foregoing reasons, the defendant's motion for early production of documents is **DENIED** on the showing made.

Dated this 27th day of October 2005.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

8