# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 05-67-P-H** |
| | ) | |
| **MARK S. SHINDERMAN, M.D.,** | ) | |
| | ) | |
| **DEFENDANT** | ) | |

## ORDER AFFIRMING RECOMMENDED DECISION
## OF THE MAGISTRATE JUDGE

This case is a criminal fraud prosecution of a medical doctor, Marc Shinderman.  Shinderman was associated with a methadone maintenance treatment facility, CAP Quality Care, Inc. ("CAP") of Westbrook, Maine.[1] Shinderman has challenged the government's access to CAP patient records, the

---

[1] I find it unnecessary to resolve the exact nature of Shinderman's relationship to CAP, apparently owned by his wife.  Shinderman maintains that he was the National Medical Director of CAP at "times relevant to this case."  Def.'s Objections to Magistrate Judge's Rec. Dec. & Order ("Def.'s Objections") at 3 (Docket Item 62).  Additionally, he says that he was a consulting member of the medical staff who "practiced medicine at CAP with full privileges (including State authority to issue prescriptions for controlled drugs) pursuant to a Maine Medical license until August 9, 2002," id. at 5, and that thereafter he continued with his role as "a consultant" to CAP, see, e.g., Def.'s Mot. to Suppress on Constitutional Grounds at 2 (Docket Item 34).  At oral argument, the government emphasized that Shinderman stopped working at the clinic as a doctor on August 9, 2002 (the date his Maine medical license expired and he could no longer see patients), and that subsequently Shinderman claims only to have been an officer and an employee of an Illinois corporation that provided consulting services to CAP but was not a direct consultant to CAP.  The government has also referred to Shinderman as CAP's "agent," "sponsor and National Medical Director."  See, e.g., Gov't's Resp. in Opp'n to Def.'s Objections ("Gov't's Resp.") at 10 & n.3 (Docket *(continued on next page)*

search warrant used to search CAP premises, the scope of the searches, and the admissibility of patient testimony or patient records at trial.  Upon *de novo* review of Magistrate Judge Kravchuk's Recommended Decision and Order[2] (Docket Item 59), I **ACCEPT** and **AFFIRM** both, with minor alteration.  The motions generally are **DENIED**, the evidence is not suppressed and the case will proceed to trial. Magistrate Judge Kravchuk has performed an excellent analysis.  I add only the following clarifications to address some of the issues raised in Shinderman's objection, the government's response and at oral argument.

**(1)** *Suppression of patient records and of evidence, including testimony, that resulted from prosecutorial access to patient records.*

I see no need to decide broadly that there is no exclusionary/suppression remedy under Title 42 for violation of patient confidentiality rules.[3]  Although the statute speaks only of fines for noncompliance, 42 U.S.C. § 290dd-2(f) (2000), and directs its attention to patients, see, e.g., id. § 290dd-2(c), both the statute and the regulations contain broad language that would support suppression for at least some violations.  For example:

> Except as authorized by a court order granted under subsection

---

Item 71).

[2] Although the Order, in contrast to the Recommended Decision, is subject only to "clearly erroneous/contrary to law" review, I would affirm it on either standard.

[3] I note, but do not rely upon, the regulatory rule of construction for these regulations:

> Because there is a criminal penalty (a fine . . . ) for violating the regulations, they are to be construed strictly in favor of the potential violator in the same manner as a criminal statute.

42 C.F.R. § 2.3(b)(3) (2005).  Here, the potential violator is the government.

> (b)(2)(C) of this section [requiring among other things "the need
> to avert a substantial risk of death or serious bodily harm"], no
> record referred to in subsection (a) of this section may be used to
> initiate or substantiate any criminal charges against a
> patient . . . .

Id.  According to the regulations:  "This restriction on use bars, among other things, the introduction of that information as evidence in a criminal proceeding and any other use of the information to . . . prosecute a patient with respect to a suspected crime."  42 C.F.R. § 2.12(d)(1) (2005).[4]  Or, more broadly:  "The patient records to which these regulations apply may be disclosed or used only as permitted by these regulations and may not otherwise be disclosed *or used in any . . . criminal . . . proceedings* . . . ."  Id. § 2.13(a) (emphasis added).[5]

Instead, I agree with Magistrate Judge Kravchuk that there has been no violation of the statute or regulations that calls for suppression.  First, I reject the argument that when the government's civil investigation turned into a criminal investigation or when the government undertook dual civil and criminal investigations, somehow its civil investigating authority lapsed.  The U.S. Department of Health and Human Services (DHHS) was entitled to access patient records in investigating whether CAP Quality Care was complying with federal Medicare or Medicaid program requirements.  Id. § 2.53. Uncovering potentially

---

[4] Another example:  "No information obtained under this section may be used to conduct any . . . prosecution of a patient . . . ."  Id. § 2.66(d)(2).

[5] Although the Eighth Circuit refused to suppress evidence under this Title in United States v. Johnston, 810 F.2d 841 (8th Cir. 1987), the holding is not strong authority because, among other *(continued on next page)*

criminal activity and beginning a criminal investigation did not reduce that civil power.  There is no argument that DHHS's interest in civil remedies ever ended; indeed, there is a civil lawsuit now pending against CAP in this Court.  See United States v. CAP Quality Care, Inc., Civ. No. 05-163-P-H (D. Me. filed Aug. 25, 2005). So long as DHHS obtained proper judicial permission to share its evidence with criminal investigators under these regulations, there is no basis for suppressing that evidence.[6]

The government made three applications to a magistrate judge to use its civilly-gathered information in a criminal prosecution.  Three times the magistrate judge granted permission.  The regulations contemplate just such a procedure:

---

things, the court was not even certain that a violation of the statute had occurred, id. at 843.

[6] There are tax cases that call for suppression when the government uses a civil investigation to further a criminal investigation, but the tax cases are unique because Internal Revenue Service (IRS) "regulations explicitly prohibit a revenue agent from developing a criminal case against a taxpayer under the guise of a civil investigation," United States v. McKee, 192 F.3d 535, 541 (6th Cir. 1999).  See also SEC v. First Fin. Group of Tex., Inc., 659 F.2d 660, 667-68 (5th Cir. 1981) ("But the rule set out [by the Supreme Court that the IRS may not use its civil authority to issue summonses solely for the purpose of gathering information for a criminal prosecution] was based upon limitations unique to the IRS resulting from the statutory scheme of the Internal Revenue Code rather than upon any general principles concerning the simultaneous and parallel prosecution of civil and criminal cases by different federal agencies.") (citing United States v. LaSalle Nat'l Bank, 437 U.S. 298 (1978); Donaldson v. United States, 400 U.S. 517 (1971)).  Outside the IRS statutory setting, parallel or overlapping criminal and civil investigations generally are not objectionable.  SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1374 (D.C. Cir. 1980).  Cf. United States v. Kordel, 397 U.S. 1, 11 (1970) ("It would stultify enforcement of federal law to require a governmental agency such as the [Food and Drug Administration] invariably to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial."); Dresser Indus., Inc., 628 F.2d at 1376 (noting that the Securities Act of 1933 and the Security Exchange Act of 1934 "explicitly empower the [Securities and Exchange Commission] to investigate possible infractions of the securities laws with a view to both civil and criminal enforcement, and to transmit the fruits of its
(continued on next page)

> A court order under these regulations may not authorize qualified personnel, who have received patient identifying information without consent for the purpose of . . . audit . . . to disclose that information or use it to conduct any criminal investigation or prosecution of a *patient*. However, a court order under §2.66 may authorize disclosure and use of records to investigate or prosecute qualified *personnel* holding the records.

42 C.F.R. § 2.62 (emphasis added).  According to section 2.66(a):

> An order authorizing the disclosure or use of patient records to criminally or administratively investigate or prosecute a program or the person holding the records (or employees or agents of that program or person) may be applied for by any administrative, regulatory, supervisory, investigative, law enforcement, or prosecutorial agency having jurisdiction over the program's or person's activities.

The government provided no notice to anyone that it was making the application, and the regulations permit that procedure:  the application "may, in the discretion of the court, be granted without notice," id. § 2.66(b).

However:

> Although no express notice is required to the program, to the person holding the records, or to any patient whose records are to be disclosed, *upon implementation of an order so granted any of the above persons must be afforded an opportunity to seek revocation or amendment of that order*, limited to the presentation of evidence on the statutory and regulatory criteria for the issuance of the court order.

Id. § 2.66(b) (emphasis added).  The parties disagree over when "implementation" of the Orders occurred here, whether Shinderman has standing to attack the sufficiency of the opportunity to seek revocation or amendment, whether

---

investigation to Justice in the event of potential criminal proceedings.").

Shinderman ever received notice that would allow him to seek revocation or amendment and, if he did, whether it was timely under either the regulation or the magistrate judge's Orders.

The government argues that no "implementation" of the Orders occurs until trial.[7]   I disagree.   The primary focus of the statute and regulations is the *disclosure* of patient information.   The regulation under which the government sought the court's permission, section 2.66(a)(1), permits issuance of an order authorizing "disclosure or use" "to criminally . . . investigate or prosecute . . . ." The Magistrate Judge's first Order authorized disclosure to prosecuting lawyers and investigators of "those parts of the records which are relevant to the investigation of Drs. Shinderman's and Keefe's prescription writing practices."[8] Implementation of the Orders, therefore, occurred when the patient records were made available to prosecutors.

The opportunity to seek revocation or amendment is  provided "to the program, to the person holding the records, or to any patient whose records are to

---

[7] To be precise, the government "submits that 'upon implementation' means something other than disclosure to [or use by] criminal investigators."  Gov't's Mem. in Resp. to Def.'s Pretrial Mots. at 17 n.3 (Docket Item 45).

[8] Def.'s Mot. to Suppress on Statutory/Regulatory Grounds, Ex. C at 2 (Order dated Apr. 24, 2003) (Docket Item 40).  The later two Orders contain nearly identical language.  See id., Ex. D at 2 (Order dated Aug. 22, 2003) ("[D]isclosure shall be limited to those parts of the records which are relevant to the investigation of CAP and its employees, including Drs. Shinderman's [sic] and Keefe."); id., Ex. E at 2 (Order dated Sept. 5, 2003) ("[T]he seizure of records shall be limited to those parts of the records which are relevant to the investigation of CAP and its employees, including Drs. Shinderman's [sic] and Keefe.").

be disclosed . . . ."  42 C.F.R. § 2.66(b).  The government argues that Shinderman fits none of those categories.  Shinderman maintains that he qualifies under the first two.  I conclude that Shinderman does fit the definition of "program," defined at section 2.11 as including "[a]n individual . . . who holds itself out as providing, and provides, alcohol or drug abuse diagnosis, treatment or referral for treatment[.]"  The government agrees that Shinderman is a program under the definition, but argues that the definition does not apply in section 2.66 for the following reason.  In permitting application for an Order, section 2.66(a)(1) deals with a program, or a person holding records, "or employees or agents of that program or person."  The government asserts that Shinderman is an employee or agent.  But, it argues, section 2.66(b), providing the opportunity to seek revocation or amendment, does not extend to employees or agents; instead, by its terms, it applies only to the program, to the person holding the records, or to any patient whose records are to be disclosed.  I conclude that the government's argument fails.  It may be that a program could have employees or agents who are not themselves a "program"; as to them, the government would be correct.  But since Shinderman himself is a "program," he has the right to seek revocation or amendment of an Order regardless of the fact that he may be also an employee or agent.  I do not therefore address whether he is also the holder of the records.

I agree with Shinderman that it is difficult to find any support in the

regulations for the government's request for, and the magistrate judge's grant of, a 90-day delay in the notice of an opportunity to seek revocation or amendment of the Orders. The regulation requires that the opportunity be afforded "upon implementation of an order." 42 C.F.R. § 2.66(b). I certainly understand that the government may have good investigative reasons for wanting to delay a target from learning about the disclosure of patient records, but that is an argument for Congress. Nothing in the statute or regulations suggests that Congress or the Secretary was relying upon some inherent court authority to grant delays.

Therefore, I conclude that the government should have allowed Shinderman an opportunity to seek revocation or amendment promptly upon receiving the patient records. Shinderman says that he did not receive that opportunity even within the 90 days provided by the Orders. Without resolving the dispute over when he received information permitting him to attack the Orders,[9] clearly he did finally receive it. I conclude that suppression is too drastic a remedy for the delay. There was no bad faith (the government obtained court approval) and Shinderman has not shown prejudice from the delay alone. The Magistrate

---

[9] Shinderman states that "neither he nor his counsel . . . received the notices," and that "Dr. Keefe, who the Government has identified as 'cooperating witness' attests by affidavit that he, too, had no knowledge of having received notification of the April 24, 2003, disclosure order" and "his attorney . . . was sent a letter from the United States Attorney's Office transmitting the August 22, 2003 and September 5, 2003 [notices] wherein [Dr. Keefe's attorney] was erroneously identified as counsel for Dr. Shinderman and CAP." Def.'s Objections at 32-33 (citation omitted). The government counters that "[a] notice was sent to the defendant or his counsel as required by each order. The notice letters were not returned to the USAO as undeliverable." Gov't's Resp. at 12.

Judge correctly rejected Shinderman's contention that prejudice is inherent simply in the lack of timeliness. Shinderman has identified no argument that he could have used immediately upon the implementation of the Orders that he was not able to use when he did become aware of them. In fact, Shinderman has never moved to revoke or amend the Orders.[10]

Like the Magistrate Judge, I find it unnecessary to resolve the factual dispute between Agent Hafener and Attorney Bowie over what was said in late May or early June of 2003 about the investigation's scope. Both agree that Hafener told Bowie that CAP was not then a criminal target but made no guarantees that the company would not become one. Their dispute is whether Hafener's comment extended to CAP staff and Shinderman. Shinderman argues that "[t]he significance of the exchange between Attorney Bowie and Agent Hafener lies in the fact that Bowie was misled about something that would have entirely changed his legal strategy in dealing with the Government investigation." Def.'s Objections at 41. I agree with Magistrate Judge Kravchuk's analysis of the law and the facts in concluding that suppression is not called for. If Agent

---

[10] The regulation limits attacks on the Orders "to the presentation of evidence on the statutory and regulatory criteria for the issuance of the court order." 42 C.F.R. § 2.66(b). The criterion for entry of an Order is good cause, demonstrated by a finding that:

> (1) Other ways of obtaining the information are not available or would not be effective; and
> (2) The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services.

*(continued on next page)*

Hafener did in fact mislead Attorney Bowie about his interest in Shinderman, it was not the flagrant deception excoriated by the court in <u>United States v. Stringer</u>, 408 F. Supp.2d 1083 (D. Or. 2006), <u>appeal docketed</u>, No. 06-30100 (9th Cir. Feb. 27, 2006).[11]  Unlike in <u>Stringer</u>, here there was a bonafide independent purpose for the civil investigation: DHHS had authority to conduct a Medicare/Medicaid audit of CAP, 42 C.F.R. § 2.539(c).  There is no question but that CAP turned over the records voluntarily despite the absence of any guarantee against possible future criminal prosecution.  Finally, since a corporation has no Fifth Amendment privilege against self-incrimination, <u>Doe v. United States</u>, 487 U.S. 201, 206 (1988), the investigator would have been able to obtain the CAP records in any event.

**(2)**     ***Motion for a <u>Franks</u> Hearing on the Probable Cause for the Search Warrant***

I have nothing to add to Magistrate Judge Kravchuk's analysis as to why a <u>Franks</u> hearing is unnecessary.

**(3)**     ***Motion to Suppress Evidence Obtained Pursuant to the Search Warrant***

I agree with Magistrate Judge Kravchuk's analysis of the issues on this

---

42 C.F.R. § 2.64(d).

[11] Both Professor LaFave and Judge Easterbrook have highlighted the tension in the caselaw over what kind of deception will support suppression.  <u>See</u> 4 Wayne R. LaFave, <u>Search and Seizure: A Treatise on the Fourth Amendment</u> § 8.2(m)-(n) (4th ed. 2004); <u>United States v. Peters</u>, 153 F.3d 445, 464 (7th Cir. 1998) (Easterbrook, J., concurring) ("Professor LaFave is rightly puzzled by courts' greater willingness to suppress evidence when agents who reveal their status give deceptive answers to inquiries about the purpose of the investigation than when agents lie about their status *as* agents.  One of these days the Supreme Court will confront the tension between these lines of cases.").

motion.  I add this comment.  If the computer search has in fact resulted in the government obtaining evidence beyond the scope of the warrant, that will be grounds for a motion to suppress as to that specific evidence.  Shinderman has identified no such evidence, but fears that there may be some.  Magistrate Judge Kravchuk has suggested that I impose some reporting obligation on the government to ensure that Shinderman (and the judge) are not surprised at trial.  I see no reason to do so.  The government assured me at oral argument that virtually its entire file has been disclosed to Shinderman.  The government also understands the risks of a mistrial or a lengthy continuance if it presents such evidence, not previously announced, at trial.   Finally, to the extent that the inventory provided in the return on the search warrant is inadequate (an issue raised at oral argument), that may be grounds for seeking corrective relief under Fed. R. Crim. P. 41, but it is not grounds for general suppression.  <u>See</u> 2 Wayne R. LaFave, <u>Search and Seizure: A Treatise on the Fourth Amendment</u> § 4.12 (4th ed. 2004) (noting that "the 'overwhelming weight of authority' is to the effect that required warrant return procedures are ministerial and that failure to comply with them is not a ground for voiding an otherwise valid search") (citing <u>United States v. Kennedy</u>, 457 F.2d 63 (10th Cir. 1972)) (footnotes and additional citations omitted).   <u>See</u> <u>also</u> 2 LaFave, <u>supra</u>, § 4.12 (distinguishing cases involving more "serious omission[s]"—such as the "complete failure to make a

return (as opposed to a return which has minor defects in its form and nature [which could be corrected at a later time in the proceedings])"—when "the remedy of exclusion is called for").

**(4)**     ***Motion in Limine***

For those patients who agree to testify, the regulation is clear.  A court order may authorize their disclosure of confidential patient communications "in connection with litigation . . . in which the patient offers testimony or other evidence pertaining to the content of the confidential communications."  42 C.F.R. § 2.63(a)(3).   In addition, patients who do not testify may give written consent to use of their records.   Id. § 2.3(a)(2) & Subpart C (Disclosures with Patient's Consent).[12]   Finally, for those who neither testify nor give written consent, a court order may authorize disclosure of confidential communications under other circumstances, one of which the government considers relevant in this case: "disclosure is necessary in connection with investigation or prosecution of an extremely serious crime, such as one which directly threatens loss of life or serious bodily injury. . . ."  Id. § 2.63(a)(2).

But I agree with Magistrate Judge Kravchuk that the three Orders the government obtained previously do not suffice because they were for access for investigation purposes.  They do not provide for use at trial.  The government will

---

[12] The government asserted at oral argument that it has written consents from all but two or three *(continued on next page)*

need to seek new Orders accordingly.  Because I have found the previous Orders appropriate for disclosing patient records to prosecuting authorities, I do not see any basis to allow the defendant's request to *voir dire* each patient witness outside the jury's presence before the witness testifies.  For ease of trial administration, however, the government shall provide documentation that it has complied with the regulation one week before the commencement of trial.

*(5)*     ***Motion to Dismiss***

I agree with Magistrate Judge Kravchuk's reasoning.

### CONCLUSION

It is therefore **ORDERED** that the Recommended Decision of the Magistrate Judge is hereby **ADOPTED** as follows:

1.     The defendant's motion to suppress on Title 42 grounds (Docket Item 40) is **DENIED**;

2.     The defendant's motion to suppress on constitutional grounds (Docket Item 34) is **DENIED**;

3.     The defendant's motion for a <u>Franks</u> hearing (Docket Item 37) is **DENIED**;

4.     The defendant's motion *in limine* (Docket Item 36) which requests exclusion of all evidence is **DENIED**, but the government shall provide, one week

_____

of the patients.

13

before the commencement of trial, documentation that it has complied with the

regulations for use of confidential patient communications; and

     5.     The defendant's motion to dismiss (Docket Item 38) is **DENIED**.

**SO ORDERED.**

**DATED THIS 24TH DAY OF MAY, 2006**


              /S/D. BROCK HORNBY            
              **D. BROCK HORNBY**
              **UNITED STATES DISTRICT JUDGE**