## UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 05-67-P-H** |
| | ) | |
| **MARK S. SHINDERMAN, M.D.,** | ) | |
| | ) | |
| **DEFENDANT** | ) | |

## ORDER ON JOINT MOTION TO QUASH SUBPOENA

The defendant, Dr. Marc S. Shinderman, has been indicted in this case for using a Drug Enforcement Administration ("DEA") registration number belonging to another; aiding and abetting acquisition of a controlled substance by deception; falsifying records required to be kept by a pharmacy; and making false statements relating to health care matters. The charges relate to his conduct before his temporary Maine medical license expired but before he applied for a permanent license in July, 2002. See Dr. Shinderman's Am. Resp. to Joint Mot. to Quash Subpoena at 2 ("Def.'s Am. Resp.") (Docket Item 105). A lengthy trial is scheduled for July, 2006. Shinderman has subpoenaed the Maine Department of Financial & Professional Regulation, Maine Board of Licensure in Medicine ["MBLM"]under Fed. R. Crim. P. 17(c), seeking:

>  1. Any and all documentation . . . regarding Dr. Marc S. Shinderman's application for a medical license and/or

>    his authority to practice medicine.
>
> 2. Any and all correspondence . . . referencing or documenting any communication between the Maine Board of Licensure in Medicine, including any of its staff or agents, and employees or staff of the state, county or federal government regarding Dr. Marc S. Shinderman, specifically including representatives of the United States Attorneys Office.

The United States and the State of Maine have moved jointly to quash the subpoena.

The standards that a trial court in this Circuit must apply in evaluating a Rule 17 subpoena are well established:

> [I]n order to require production prior to trial, the moving party just show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

United States v. LaRouche Campaign, 841 F.2d 1176, 1179 (1st Cir. 1988) (quoting United States v. Nixon, 418 U.S. 683, 699-700 (1974)). Here, the two governments argue that the subpoena must be quashed because Maine law makes the materials confidential; because Shinderman cannot show that they are admissible or relevant at trial; and because this is only a "fishing expedition." Shinderman disagrees.

Preliminarily, I note the distinction between civil discovery standards (materials, though not admissible, that could lead to admissible evidence) and the

obligations of Brady v. Maryland, 373 U.S. 83 (1963) (exculpatory *material*), on the one hand, and Rule 17 on the other hand. Rule 17 applies only to admissible *evidence*, not to materials that might lead to discovery of exculpatory evidence. See United States v. Libby, __ F. Supp.2d __, Misc. Nos. 06-123, 06-124, 06-125, 06-126, 06-128 & 06-169, 2006 WL 1453084, at *2-*3 (D.D.C. May 26, 2006).

I do not see how Request #1 meets the Rule 17 standards. Shinderman's application for a permanent license in July 2002 occurred *after* the alleged criminal conduct. Moreover, it does not appear that Shinderman lacks the documents in question. In his Amended Response to the motion to quash, he says that as a result of previous inquiries:

> MBLM produced copies of Dr. Shinderman's application and other materials. However, MBLM refuses to turn over statements by people who will be witnesses at the criminal trial or information relating to the credibility of those witnesses. . . .

Def.'s Am. Resp. at 2. Accordingly, the motion to quash is **GRANTED** as to Request #1.

As drafted, the second request also does not meet the requirements of Rule 17. It is not apparent that the requested documents are evidentiary and relevant, nor that this is other than a general fishing expedition. But in his response to the motion to quash as quoted above, Shinderman has narrowed his request to documents that would impeach certain witnesses that the government plans to call at trial. I therefore address the Rule 17 subpoena Request #2 as narrowed to impeachment documents.

3

In his response to the motion to quash, Shinderman seeks specifically:

> documents relating to a complaint filed by one of Dr. Shinderman's chief accusers. Sharon P. is identified in the Indictment as one of the patients who received a prescription from Dr. Shinderman (Count 14) and who acquired a controlled substance by deception in that the prescription was invalid (Count 39). She is expected to testify at trial . . . . What Sharon P. told MBLM personnel regarding this conduct, evidence regarding her cooperation and the resulting benefits from state or federal authorities, and facts relating to her credibility are critical to the defense. Moreover, any involvement by federal agencies in motivating or facilitating her civil complaint or her complaint to MBLM constitutes classic impeachment information within the meaning of Giglio v. United States, 405 U.S. 150 (1972).

Def.'s Am. Resp. at 6. Shinderman also seeks "evidence regarding other government witnesses," namely, DEA case agent Masar ("[e]vidence relating to her communications with MBLM personnel about the parallel investigations"), and those MBLM investigators and DEA registration clerks who will be called as witnesses ("their reports and prior statements"). Id. at 6-7.

The two governments argue that "[s]everal courts have found an absolute prohibition on the use of a Rule 17(c) subpoena to obtain documents solely for impeachment purposes." Joint Reply to Def.'s Opp'n to Joint Mot. to Quash Rule 17 Subpoena at 5 ("Joint Reply") (Docket Item 109). They cite United States v. Fields, 663 F.2d 880, 881 (9th Cir. 1981); United States v. Cuthbertson, 651 F.2d 189, 195 (3d Cir. 1981); and United States v. Cherry, 876 F. Supp. 547, 553 (S.D.N.Y. 1995). Although that appears to be a correct reading of Cherry, it is too broad a reading of the two circuit cases. They held only that impeachment

4

documents under Rule 17 need not be produced *until the relevant witness testified*.  See Fields, 663 F.2d at 881; Cuthbertson, 651 F.2d at 195.  In any event, the law in this Circuit is clear that impeachment evidence is subject to Rule 17, and that its pretrial disclosure is committed to "the sound discretion of the district court." LaRouche Campaign, 841 F.2d at 1180.  Specifically, "where a putative key witness, whose general testimony is already known, is scheduled to testify, we cannot hold it an abuse of discretion to compel the pretrial production of a substantial interview of that witness." Id.  If there is legitimate concern about pre-trial release of these documents to the defendant, *in camera* review seems to be available.  Id. at 1180 & n.7; 1182-83.[1]

The First Circuit ruled in LaRouche Campaign that evidence of "inconsistent statements and bias" by a prosecution witness are "relevant evidence, admissible at trial." Id. at 1180.  The two governments distinguish LaRouche Campaign (they do not cite it by name, but that is a reasonable inference) with the statement that "defendant's request here is distinguishable from the cases cited by the defendant for the proposition that a subpoena may be used to obtain out-takes of witness interviews where the disclosed interviews are clearly relevant to the case." Joint Reply at 5.  I am not sure that I appreciate the distinction.  Defense counsel in LaRouche Campaign did not know what was in

---

[1] The Jencks Act, 18 U.S.C. § 3500 (statements of witnesses other than the defendant do not have to be turned over to counsel until the witness testifies at trial), is not applicable because these
*(continued on next page)*

5

the out-takes of the NBC interviews of the witness.  Instead, the court referred to the <u>Nixon</u> standard of "a sufficient likelihood," and even the "likelihood" that facial expressions might show animus.  <u>Id</u>. at 1179-80 (citing <u>Nixon</u>, 418 U.S. at 700).  As Judge Walton recently observed in <u>Libby</u>, the Supreme Court in <u>Nixon</u> "concluded that the specificity requirement could be satisfied if there is a 'sufficient likelihood,' demonstrated through rational inferences, that the documents being sought contain relevant and admissible evidence."  <u>Libby</u>, 2006 WL 1453084 at *4 (citing <u>Nixon</u>, 418 U.S. at 700).[2]  "[E]xquisite specificity" is not required.  <u>Libby</u>, 2006 WL 1453084, at *4 (citing <u>United States v. Poindexter</u>, 727 F. Supp. 1501, 1510 (D.D.C. 1989)).  A major purpose is to let the subpoenaed party know what is being requested so as to lodge relevancy or admissibility objections.  <u>Libby</u>, 2006 WL 1453084, at *4.  If the request is narrowed as in the defendant's responsive memorandum, I conclude that it meets the <u>Nixon/LaRouche Campaign</u> standard.

Finally, I note the two governments' argument that Maine law makes the requested material confidential and that I should follow a recent ruling by Magistrate Judge Cohen in a civil case that Maine statutes do not permit disclosure.  If it truly is correct that Maine law will not permit the disclosure, then

---

are not documents in the custody of the United States government.

[2] In <u>Nixon</u>, the Supreme Court found that "a rational inference that at least part of the conversations relate to the offenses charged in the indictment" was sufficient.  418 U.S. at 700.

it seems to me that I would need to review the materials to determine whether withholding them would prevent vindication of the defendant's constitutional rights (Fifth and Sixth Amendment) at trial. If so, enforcement of the state confidentiality provision presumably would result in my excluding those witnesses from testifying in the prosecution's case. Noting that the State has some discretion in the confidentiality determination, Code Me. R. 02-027 Ch. 2, § 2 (West 2005), I hesitate to make such a ruling unless required to do so.

Accordingly, by June 23, 2006, the two governments shall disclose to the defendant the materials requested under Request #2 *as narrowed* **OR** provide them to the court *in camera* with a request that disclosure be delayed and why. They shall also inform the court and opposing counsel whether they insist upon confidentiality under Maine law such that if the court concludes that the evidence is essential to a fair trial, witnesses must be excluded. The motion to quash is **GRANTED** as to Request #1.

**SO ORDERED.**

**DATED THIS 16TH DAY OF JUNE, 2006**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**