# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 05-67-P-H** |
| | ) | |
| **MARK S. SHINDERMAN, M.D.,** | ) | |
| | ) | |
| **DEFENDANT** | ) | |

### ORDER CALCULATING THE SENTENCING GUIDELINES ON DISPUTED ISSUES

A jury has convicted the defendant Dr. Mark S. Shinderman on multiple counts of criminal conduct for using Dr. Steven Keefe's name and DEA registration number in prescribing medications and keeping records at the CAP Quality Care methadone clinic in Westbrook. In connection with sentencing, the parties dispute the application of four particular Sentencing Guidelines. They have briefed their respective positions, and have agreed that I should resolve the disputes on the papers without further argument or hearing. The issues are:

1.    How to group the Counts;

2.    Whether to provide an enhancement for breach of trust;

3.    Whether to provide an enhancement for obstruction of justice; and

4.    Whether to provide a reduction for acceptance of responsibility.

*(1)     Grouping*

The jury convicted Dr. Shinderman under four statutory sections or subsections.  The convictions under Counts 1 through 25, 21 U.S.C. § 843(a)(2), fall under Guideline 2D3.1, with a Base Offense Level of **6**.  The convictions under Counts 26 through 50, 21 U.S.C. § 843(a)(3), fall under Guideline 2D2.2, with a Base Offense Level of **8**.  The convictions under Counts 51 and 52, 21 U.S.C. § 843(a)(4)(A), fall under Guideline 2D1.13, with a Base Offense Level of **6**.  The convictions under Counts 53 through 68, 18 U.S.C. § 1035, fall under Guideline 2B1.1, with a Base Offense Level of **6**.

Chapter 3, Part D, of the Sentencing Guidelines provides instructions on how to deal with multiple-count convictions:

> In order to limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct, this Part provides rules for grouping offenses together.  Convictions on multiple counts do not result in a sentence enhancement unless they represent additional conduct that is not otherwise accounted for by the guidelines.  In essence, counts that are grouped together are treated as constituting a single offense for purposes of the guidelines.

United States Sentencing Commission, <u>Guidelines Manual</u> ("USSG"), ch. 3, Pt. D, intro. comment (2006).

The grouping guideline in question is USSG § 3D1.2.  It provides: "All counts involving substantially the same harm shall be grouped together into a single Group."  The parties agree that subsection (b) controls.  It provides for

grouping "[w]hen counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan."[1]  USSG § 3D1.2(b).  The parties dispute only whether Dr. Shinderman's various convictions involve "the same victim."  Dr. Shinderman argues that society is the "same victim" for all counts.  The government argues that there are several victims, ranging from Dr. Keefe, to the individual patients, to the pharmacies, to the Medicaid program, to society.

I start with the convictions under 21 U.S.C. § 843, Counts 1 through 52. The jury found Dr. Shinderman guilty of the following criminal conduct:

1.    Using another person's (Dr. Steven Keefe's) DEA registration number to dispense controlled substances (Counts 1 through 25), in violation of subsection (a)(2);

2.    Aiding the acquisition of a controlled substance by fraud or misrepresentation by using Dr. Keefe's name and/or DEA registration number (Counts 26 through 50[2]), in violation of subsection (a)(3); and

---

[1] Subsection (d) does not apply because it is explicitly unavailable for the Guideline (2D2.2) that applies to Counts 26 through 50.  Subsection (c) does not apply because it is limited to counts that "embod[y] conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts," 3D1.2(c), not the case here.  Subsection (a) does not apply because it is limited to counts that involve "the same act or transaction," 3D1.2(a), whereas Dr. Shinderman's convictions involve many acts or transactions.

[2] Count 46 was dismissed by agreement before the case went to the jury.

3.     Furnishing false material information (the use of Dr. Keefe's name and/or DEA registration number) in a record that a pharmacy is required to keep (Counts 51 and 52), in violation of subsection (a)(4)(A).

Who is/are the victim or victims for these offenses?  Application Note 2 states that the term victim does not include indirect or secondary victims. Instead there is "one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim."  USSG § 3D1.2, comment (n.2).  If there are no "identifiable victims" (drug offenses are listed as a specific example), "the 'victim' . . . is the societal interest that is harmed.  In such cases, the counts are grouped together *when the societal interests that are harmed are closely related*."  Id. (emphasis added).  The convictions here fall under a regulatory statute:  the Controlled Substances Act, designed many years ago (before our contemporary concern with identity theft) to create a "closed regulatory system," Gonzales v. Raich, 545 U.S. 1, 13 (2005), so that controlled substances can always be tracked and accounted for, and used only for legitimate purposes.[3]  Section 843 is not a statute designed to protect individual physicians, individual patients, or individual pharmacies; any protection of them is a by-product of the closed regulatory system.  "The provision's legislative history indicates that Congress

4

intended it chiefly to address a threat to the integrity of the *regulatory* system, *i.e.*, the system for administrative control of the legitimate drug industry." United States v. Limberopoulos, 26 F.3d 245, 250 (1st Cir. 1994) (emphasis original). That is the common societal interest for all these subsections. The other "victims" the government identifies are secondary to this societal goal. I conclude that Counts 1 through 52 should be grouped under 3D1.2(b).

Counts 53 through 68 are different. The seven convictions on these counts[4] fall under a different federal statute, "False Statements Relating to Health Care Matters," 18 U.S.C. § 1035, not part of the Controlled Substances Act like section 843. The Health Insurance Portability and Accountability Act of 1996 (HIPAA) added section 1035 to Title 18, Pub. L. No. 104-191, 110 Stat. 1936, long after the Controlled Substances Act was in effect. HIPAA "significantly expands Federal authority and resources to combat fraud and abuse in Federal health programs, such as Medicare, and in the private sector." Statement by President William J. Clinton upon signing H.R. 3103 (Aug. 21, 1996), *reprinted in* 1996 U.S.C.C.A.N. 1990, 2163. Thus, it focuses on a different societal interest than the Controlled Substances Act. Here the concern is to ensure the integrity of health care records for purposes of reducing underlying health care costs. See H.R. Rep.

---

[3] The First Circuit calls section 843 the "unlawful-drug-prescribing statute," as distinguished from section 841, the "unlawful-drug-trafficking statute." Limberopoulos, 26 F.3d at 249, and says that the distinction is between unlawful record-keeping and unlawful drug distribution. Id.

[4] The jury acquitted Dr. Shinderman on Counts 55-56, 58-60, 64-66, and 68.

No. 104-496, at 69 (1996) ("Background and Need for Legislation"), *reprinted in* 1996 U.S.C.C.A.N. 1865, 1869. I conclude that although these seven counts are to be grouped among themselves (the applicable Guideline for a section 1035 offense is 2B1.1, and Guideline 3D1.2 explicitly requires grouping of 2B1.1 convictions), they cannot be grouped with the remaining counts. A societal interest is the victim, but it is a different societal interest than that for the Controlled Substances Act offenses. Thus, there are two Groups.

Since I am combining the first three categories of convictions into one Group, I use for that Group the offense level for the most serious of those Counts, Counts 26 through 50, which is Offense Level 8. USSG § 3D1.3(a). For determining the Combined Offense Level, I assign that Group one unit. USSG § 3D1.4(a). I count one additional unit for the second Group because it is 1 to 4 levels less serious (specifically Offense Level 6). Id. Because there are thus two units, I add two levels. USSG § 3D1.4. Therefore, the Base Offense Level is 10.

**(2)      *Abuse of Position of Trust***

Guideline 3B1.3 provides for a two-level increase "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." Doctors are specifically included among those who have a "special skill." USSG § 3B1.3, comment (n.4). "Public or private trust" refers to positions "characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment

6

that is ordinarily given considerable deference)," "subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." USSG § 3B1.3, comment (n.1). It is difficult to imagine a situation that more closely fits this definition than a doctor's prescription-writing practices. He is subject to no supervision. Prescription writing is at the heart of the medical role and is given "considerable deference." What nurse or employee is going to challenge a doctor's signature or the DEA number he uses? Dr. Shinderman argues that the statutes in question deal with doctors, and that therefore there should be no enhancement when a doctor commits the crime. But the statutory coverage is not limited to doctors (see in particular 18 U.S.C. § 1035) and the Guidelines that establish the Base Offense Levels are designed for far broader categories. It is appropriate therefore to apply the two-level increase.

**(3)**      *Obstruction of Justice*

According to Guideline 3C1.1, there is a two-level increase if a defendant willfully obstructs justice. Committing perjury that "pertains to conduct that forms the basis of the offense of conviction" is a specific example. USSG § 3C1.1, comment (n.4(b)). The enhancement applies to a defendant who gives false testimony under oath "concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. D'Andrea, 107 F.3d 949, 958 (1st Cir. 1997) (quoting

United States v. Dunnigan, 507 U.S. 87, 94 (1993)).  Dr. Shinderman testified during his trial.  The government maintains that his testimony includes many instances of perjury; Dr. Shinderman denies it.  I presided at the trial, and I have read a transcript of Dr. Shinderman's testimony.

I find many of the issues over which the parties argue to be immaterial (the nature of the DEA walkthrough; retrospective deciphering of signatures; financial motivations; etc.).  Dr. Shinderman was obviously frustrated by the bureaucratic obstacles he faced; he believed that the patient needs he was trying to serve were paramount.  But the key issue at trial was whether Dr. Shinderman had, or honestly believed that he had, Dr. Keefe's authority to sign Dr. Keefe's name.  Dr. Keefe testified that he did *not* give Dr. Shinderman that permission (although Dr. Keefe also testified that there would have been no reason for him not to give the permission).  Dr. Shinderman testified that Dr. Keefe *did* give him direct permission, and testified about a variety of circumstances that he says reasonably led him to infer permission.  The jury believed Dr. Keefe, and disbelieved Dr. Shinderman; otherwise they could not have found Dr. Shinderman guilty of any of Counts 26 through 68.[5]  I agree with the jury.  There can be no doubt that the fact in question was material; it was central to the defense's theory of the case,

_____

[5] In accordance with 21 U.S.C. § 843(a)(2), the jury instruction on Counts 1 through 25 required the jury to find, for conviction, that Dr. Shinderman intentionally used Dr. Keefe's registration number, but did not deal with the issue of whether he believed that he had Dr. Keefe's permission *(continued next page)*

which was good faith.   Dr. Shinderman's false testimony about obtaining Dr. Keefe's authority cannot be attributed to confusion, mistake, or faulty memory. Instead, as the jury must have found, it was a willfully false reconstruction of what transpired between him and Dr. Keefe.[6]   I therefore apply the two-level increase.

**(4)     *Acceptance of Responsibility***

Under Guideline 3E1.1(a), there is a two-level decrease "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense."   Dr. Shinderman is not entitled to that reduction.   It is rare to grant the reduction to a defendant who puts the government to its burden of proof at trial, USSG § 3E1.1, comment (n.2.), which is what happened here.   It is also rare to grant it when there has been obstruction of justice, USSG § 3E1.1, comment (n.4), as I have found here.   Whatever hubris led to Dr. Shinderman's decisions to ignore legal requirements, it has continued in his ongoing refusal to admit that he broke the law.   There will be no reduction for accepting responsibility.

As a result, the Guideline calculations are as follows:

**The Criminal History is I.**

_____

to do so.  Conviction on Counts 26 through 68 required the jury to find intentional fraud on the part of Dr. Shinderman.

[6] Dr. Shinderman did not submit affidavits on the obstruction of justice issue with his original sentencing memorandum.  Although he did submit affidavits with his Response to Government's Sentencing Memorandum (Docket Item 218), I noted in my Order of January 5, 2007 (Docket Item 226) that this was too late and that as a result I would resolve the issue according to the trial *(continued next page)*

**The Total Offense Level is 14.**

**The Guideline Range is 15 to 21 months.**

**The Fine Range is $4,000 to $40,000.**

**Restitution of $619.62 is due and payable to Medicaid.**

The Clerk shall schedule this matter for sentencing on a Monday no less than 30 days from now.

**SO ORDERED.**

**DATED THIS 20TH DAY OF FEBRUARY, 2007**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

_____

record.  I have nevertheless reviewed those affidavits.  They do not alter my conclusion on the matter.